Garry, J.
Appeal from an order of the Supreme Court (Cahill, J.), entered December 19, 2012 in Sullivan County, which denied defendants’ motions for, among other things, summary judgment dismissing the first and second amended complaints.
*1144 During the summer of 2001, plaintiffs subrogee, the operator of a summer camp in Glen Spey, Sullivan County, purchased two new gas-operated clothes dryers and installed them in a laundry room in the camp’s dining facility. Defendants Bottini Fuel and Morgan Fuel and Heating Company (hereinafter collectively referred to as Bottini) participated in the installation by connecting the dryers to existing gas lines,[1] and returned thereafter to service the dryers, one of which did not operate correctly. In August 2001, the dining facility was destroyed by a fire that began in the laundry room. The precise cause of the fire was not determined, but an investigator retained by plaintiff concluded that it originated in the area of the malfunctioning dryer, and that this dryer was the only potential ignition source that could not be eliminated.
Thereafter, plaintiff commenced this subrogation action against Bottini, alleging causes of action in breach of warranty and negligence. In 2006, plaintiff amended the complaint to add defendants Bermil Industries Corporation and Wascomat of America (hereinafter collectively referred to as Wascomat), the distributors from whom the dryers were purchased. In 2012, Wascomat and Bottini separately moved to dismiss the complaints based on spoliation of evidence and, in the alternative, for summary judgment on the merits. Supreme Court denied the motions, and defendants appeal.
Initially, defendants contend that the complaints should be dismissed because plaintiff allegedly failed to preserve certain evidence. Sanctions for spoliation — including the dismissal of a pleading — may be imposed when a litigant intentionally or negligently disposes of critical items of evidence before an opposing party has an opportunity to inspect them (see CPLR 3126 [3]; Cummings v Central Tractor Farm & Country, 281 AD2d 792, 793 [2001], lv dismissed 96 NY2d 896 [2001]; Hartford Fire Ins. Co. v Regenerative Bldg. Constr., 271 AD2d 862, 863 [2000]). There is no evidence in the record here that defendants were deprived of such an opportunity. To the contrary, Bottini’s representatives were present for an inspection of the fire scene conducted immediately after the fire, as well as a second inspection approximately two months later. Between the two inspections, the dryer and all other evidence remained in place on the fire scene, secured by a fence,[2] and Bottini does not *1145 claim that it sought to conduct any additional investigations or was prevented from doing so. Shortly after the fire, Wascomat was also advised that its dryer might have caused the fire, and was invited to inspect the scene. Wascomat did not accept this invitation, nor another in early October 2001, when plaintiff requested that an inspection be scheduled promptly, as restoration of the premises could not be further delayed. Wascomat instead disclaimed involvement, advising that it “does not now manufacture and has never manufactured dryers.” Plaintiff responded by offering a final inspection opportunity on the next day; Wascomat did not respond, the second inspection was conducted in its absence, and the evidence was then removed and stored.
Defendants later inspected the stored evidence, but argue that an adequate investigation was precluded by alleged insufficiencies in plaintiffs inspections and the failure to locate and preserve an electrical panel that defendants now claim is necessary to determine the fire’s origin.[3] However, the existence and alleged significance of this panel, as well as certain other information that defendants contend should have been revealed during plaintiffs investigation, could also have been “discover[ed] through a timely inspection” by defendants, had they elected to conduct one (Papa v Russo, 279 AD2d 744, 746 [2001], lv denied 99 NY2d 507 [2003]). Moreover, the absence of the disputed panel did not prevent defendants’ experts from inspecting the dryer that plaintiff claims was the sole cause of the fire, nor from opining that this dryer was not defective. Thus, plaintiffs failure to locate the panel did not result in any prejudice preventing defendants from defending the case, and we find no “clear abuse of discretion” in Supreme Court’s refusal to impose sanctions (State of New York v 158th St. & Riverside Dr. Hous. Co., Inc., 100 AD3d 1293, 1295 [2012], lv denied 20 NY3d 858 [2013]; see Miller v Weyerhaeuser Co., 3 AD3d 627, 628 [2004], lv dismissed 3 NY3d 701 [2004], appeal dismissed 5 NY3d 822 [2005]; compare Abulhasan v Uniroyal-Goodrich Tire Co., 14 AD3d 900, 903 [2005]).
Next, we reject Wascomat’s contention that Supreme Court erred in denying its motion for summary judgment on the merits. With regard to the negligence claim, Wascomat asserts *1146 that plaintiff offered no evidence to contravene the opinions of defendants’ experts that no electrical or mechanical failure in the dryer caused the fire.[4] However, the Bottini employee who performed the gas installation testified that, although one of the two new dryers functioned correctly, the other never did, but instead “short cycl[ed],” such that its gas flame did not stay lit and no heat was produced. This employee further testified that he called a Wascomat technical support representative for assistance in programming the dryer to correct this malfunction, but that the dryer “would not take the program.” He then turned off the gas supply to the dryer, told camp representatives that the dryer should not be used, and advised them to obtain assistance from Wascomat. Upon returning to the camp on a later date, he found that the gas had been turned back on and the dryer — which still did not function correctly — was being used; he repeated his warning and again turned off the gas. In further deposition testimony, a camp employee confirmed that he had been told by the Bottini employee that the dryer did not function correctly, and should not be used. The camp employee testified that he put a sign on the dryer warning against its use, but discovered on the evening preceding the fire that the sign had been removed and the dryer was being used — and the individual using it continued to do so, even after the camp employee told him to stop. Finally, plaintiff’s fire investigator testified that he learned during his investigation that a camp employee had used the dryer on the night before the fire. These submissions raise questions as to whether the dryer was defective and whether it was being used in a defective condition just before the fire. Wascomat thus failed to meet its prima facie burden of demonstrating the absence of all material issues of fact as to whether a defect in the dryer caused the fire. Accordingly, summary judgment dismissing the negligence claim against Wascomat was properly denied, regardless of the sufficiency of plaintiffs opposing papers (see Vega v Restani Constr. Corp., 18 NY3d 499, 503 [2012]; Oswald v Oswald, 107 AD3d 45, 47 [2013]).
Supreme Court likewise properly denied summary judgment on the breach of warranty claim against Wascomat. In this regard, Wascomat contends that even if the dryer was defective, its continued use by camp employees after they were warned of the defect constituted an intervening cause such that any breach of warranty was not the proximate cause of the fire (see UCC 2-314, Comment 13). However, to break the chain of causation *1147 in this manner, the conduct at issue must be “extraordinary under the circumstances, not foreseeable in the normal course of events, or independent of or far removed from the defendant’s conduct” (Derdiarian v Felix Contr. Corp., 51 NY2d 308, 315 [1980]; see Knickerbocker v De Mars, 147 AD2d 739, 741-742 [1989], lv denied 74 NY2d 606 [1989]). We cannot say, as a matter of law, that it was unforeseeable or extraordinary for employees to continue to use a dryer that could be operated, but that did not properly regulate its heat levels. Moreover, there was no evidence that any warning was given that continued use of the dryer was a fire hazard. Accordingly, the determination whether the continued use severed any causal connection between the dryer and the fire is a factual question for the jury (see Tryon v Square D Co., 275 AD2d 567, 569 [2000]; Meseck v General Elec. Co., 195 AD2d 798, 800 [1993]; Nutting v Ford Motor Co., 180 AD2d 122, 131 [1992]).[5]
Plaintiff does not oppose Bottini’s claim that the breach of warranty claim against it should have been dismissed. We agree, as the evidence reveals that Bottini’s involvement was limited to installation and repair services, and “[n]o warranty attaches to the performance of a service” (Rochester Fund Muns. v Amsterdam Mun. Leasing Corp., 296 AD2d 785, 787 [2002] [internal quotation marks and citation omitted]; see Torok v Moore’s Flatwork & Founds., LLC, 106 AD3d 1421, 1423 [2013]). As to the negligence cause of action, Bottini submitted the testimony of an expert opining that the fire was not caused by any negligence on Bottini’s part. There is no expert opinion to the contrary. Bottini’s employee did not disturb existing gas lines, but simply connected the lines to new fittings on the back of the dryers, and testified without contradiction that he tested the laundry room thereafter and found no gas leaks. There is no evidence that any undiscovered gas leak or other installation error caused the fire. Bottini asserts that the subject dryer did not function correctly from the point of installation, that its employee’s remedial efforts were limited to programming the dryer, that he followed the instructions of Wascomat technical personnel in this respect, and that there is no evidence that he did so incorrectly. Finally, although plaintiffs investigator found that the dryer’s back panel had been removed, the uncontra *1148 dieted testimony establishes that the Bottini employee did not remove this back panel while servicing the dryer, and that the panel was in place following the final service call. This evidence, in addition to the previously discussed testimony regarding the Bottini employee’s warnings that the dryer should not be used and actions in repeatedly turning off the gas, establishes on a prima facie basis that no negligence on Bottini’s part cáüsed the fire, shifting the burden to plaintiff to raise triable issues of fact (see Gray v R.L. Best Co., 78 AD3d 1346, 1350-1351 [2010]).
In response, plaintiff relies primarily on circumstantial evidence that the dryer was defective and that the fire originated therein, which — although potentially relevant to Wascomat’s liability — fails to present triable issues of fact as to whether Bottini’s installation and services were negligent. Plaintiff further contends that Bottini failed to provide service reports substantiating its employee’s claim that he warned camp personnel not to use the dryer. However, this claim was corroborated by the camp employee, and no record evidence contradicts it or suggests that the service reports might indicate otherwise. Further, it was not clearly shown that any relevant service reports are actually missing. Neither Bottini’s employee nor the camp employee — testifying almost a decade after the fire — could remember exactly when or how many service calls were made, and Bottini apparently did supply reports describing two service calls to the camp within five days of the fire. Under these circumstances, plaintiff’s theory that additional service reports might reveal some act or omission on Bottini’s part that caused the fire “is founded upon mere speculation and surmise” (Flahive v Union Coll., 99 AD3d 1151, 1153 [2012]). We find that Bottini’s summary judgment motion on this cause of action should have been granted, as plaintiff failed to demonstrate the existence of factual issues as to whether Bottini’s negligence was a substantial cause of the fire (see 92 Ct. St. Holding Corp., LLC v Monnet, 106 AD3d 1404, 1406 [2013]; Gray v R.L. Best Co., 78 AD3d at 1351; compare Rockefeller v Albany Welding Supply Co., 3 AD3d 753, 756 [2004]).
Peters, PJ., Rose and Egan Jr., JJ., concur. Ordered that the order is modified, on the law, with costs to defendants Bottini Fuel and Morgan Fuel and Heating Company, by reversing so much thereof as denied said defendants’ motion for summary judgment dismissing the first and second amended complaints against them; motion granted and said complaints dismissed as to these defendants; and, as so modified, affirmed.

. A nonparty contractor performed related electrical work.

. Contrary to the allegation of Bottini’s expert — who never inspected the fire scene — the record does not reveal that adequate investigation was prevented by bulldozing. Although earthmoving equipment was apparently *1145 used to extinguish the fire in other areas, the uncontradicted testimony establishes that no such activity took place in the laundry room area.

. During the 2001 inspections, plaintiffs investigator found and preserved an electrical panel. In 2008, an electrical technician testified that the new dryers had been wired to a different panel; in 2011, defendants’ experts opined that the cause of the fire could not be determined without examining this panel.

. Plaintiff’s investigator based his opinion upon heat patterns at the scene, the location of debris, and the elimination of other possible causes.

. We agree with Wascomat that Supreme Court erred in finding that a 2005 design change in the dryer’s thermostat constituted evidence of negligence relative to the 2001 fire (see McGarvin v Weller Assoc., 273 AD2d 623, 625 [2000]; Perazone v Sears, Roebuck & Co., 128 AD2d 15, 17 [1987]). However, in light of the other evidence, the court’s reliance on this inadmissible evidence was harmless (see Huff v C.K. Sanitary Sys., 260 AD2d 892, 896 [1999]).