Globalx, Inc. v Hogwarts Capital, LLC (2024 NY Slip Op 02094)

Globalx, Inc. v Hogwarts Capital, LLC

2024 NY Slip Op 02094

Decided on April 18, 2024

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: April 18, 2024

Before: Renwick, P.J., Kapnick, Shulman, Rosado, O'Neill Levy, JJ. 

Index No. 654558/21 Appeal No. 2085 Case No. 2022-05289 

[*1]Globalx, Inc., Plaintiff-Respondent,
v
Hogwarts Capital, LLC, et al., Defendants-Appellants.

Catafago Fini LLP, New York (Tom M. Fini of counsel), for appellants.
The Postlethwaite Law Firm PLLC, New York (Preston J. Postlethwaite of counsel), for respondent.

Order, Supreme Court, New York County (Gerald Lebovits, J.), entered on
or about October 11, 2022, which, insofar as appealed from, denied defendants' motion to dismiss the first and fourth through seventh causes of action, unanimously modified, on the law, to dismiss all the causes of action except for the sixth for breach of contract, and otherwise affirmed, without costs.
This action relates to a broker's fee that plaintiff claims is owed to it by defendants. It is undisputed that there was no signed written agreement between plaintiff and defendants, and that the underlying transaction did not occur. Regardless, plaintiff has sufficiently pleaded facts supporting the elements of a breach of contract claim (see e.g. Fawer v Shipkevich PLLC, 213 AD3d 408, 408 [1st Dept 2023]). The complaint alleges that the parties were operating under an implied or oral brokerage arrangement, and defendants have not asserted a statue of frauds defense. While the proposed sale agreement (the PSA) provided that any brokerage commissions would be due at "closing" — and the closing did not occur  plaintiff was not a party to this PSA, and thus was not bound by its terms. The PSA also provided that the broker's fee would be governed by a "separate agreement" between defendants and plaintiff  which plaintiff sufficiently alleges was an oral arrangement that was binding on defendants and did not require the deal to close before plaintiff earned the commission.
However, the court should have dismissed the remainder of plaintiff's claims. First, plaintiff's fraud claim, which is essentially a repackaged breach of contract claim, fails in multiple respects, and in any event is not pled with the requisite particularity required by CPLR 3016(b). To state a claim for fraud, a plaintiff must allege "[1] a misrepresentation or a material omission of fact which was false and known to be false by [the] defendants, [2] made for the purpose of inducing the other party to rely upon it, [3] justifiable reliance of the other party on the misrepresentation or material omission, [4] and injury" (Pasternack v Laboratory Corp. of Am. Holdings, 27 NY3d 817, 827 [2016] [internal quotation marks omitted]). Plaintiff has not sufficiently alleged a fraud claim here.
Even assuming that the "Proof of Funds" letter and defendants' related statements regarding its liquidity status were sufficient to allege a "knowing misrepresentation" directed at plaintiff for the purpose of inducing its reliance, any such misrepresentation did not "directly cause[] the loss about which plaintiff complains" (Laub v Faessel, 297 AD2d 28, 31 [1st Dept 2002]). Thus, in the absence of "loss causation," plaintiff's fraud claim must be dismissed (id.). At most, plaintiff's reliance on any purported misrepresentation regarding the availability of defendant's funds caused it to spend time working on the deal that it was not compensated for. However, these types of damages are inherently contractual, and are [*2]not recoverable for fraud (see e.g. Kumiva Group, LLC v Garda USA Inc., 146 AD3d 504, 506-507 [1st Dept 2017]).
Plaintiff's claims for quantum meruit and unjust enrichment also should have been dismissed. Plaintiff alleges that defendants breached an implied brokerage contract and committed various other torts, including fraud. "To the extent these claims succeed, the unjust enrichment claim is duplicative," and to the extent those claims are defective, "the unjust enrichment claim cannot remedy" them (see e.g. Island Stars 21 Inc. v Buccaria, 221 AD3d 531, 532 [1st Dept 2023]). This Court has also held that a broker fee claim does not present the typical case of unjust enrichment where "the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled" (Stevens v RX Med. Dynamics, LLC, 191 AD3d 487, 488 [1st Dept 2021], lv denied 37 NY3d 090 [2021]). The quantum meruit claim fails for similar reasons.
Finally, the court should have dismissed the tortious interference with contract claim against the individual defendants. Tortious interference with contract requires "the existence of a valid contract between the plaintiff and a third party, defendant's knowledge of that contract, defendant's intentional procurement of the third party's breach of the contract without justification, actual breach of contract, and damages resulting therefrom" (Mufg Union Bank, N.A. v Axos Bank, 196 AD3d 442, 444-445 [1st Dept 2021], lv dismissed 38 NY3d 996 [2022]).
Plaintiff contends that the individual defendants caused defendant Hogwarts to breach the PSA so that it would not have to pay a broker's fee to plaintiff.
This claim can be rejected outright, as plaintiff was not a third-party beneficiary to the PSA, and thus could not have earned a commission under it.
Plaintiff also alleges that the individual defendants improperly procured Hogwarts' breach of the implied brokerage agreement between plaintiff and Hogwarts. However, individuals who are officers or agents of a company cannot be held liable for tortiously interfering with their own company's alleged contracts absent particularized allegations that the officer was acting beyond the scope of his employment or for his own personal benefit (see Joan Hansen & Co. v Everlast World's Boxing Headquarters Cop., 296 AD2d 103, 109-110 [1st Dept 2002]). No such allegations exist here.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: April 18, 2024